**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA DANIELLE NAGY, | ) | CASE NO. 1:22-CV-00368-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION & |
| COMMISSIONER OF SOCIAL SECURITY | ) | ORDER |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Jessica Nagy ("Nagy" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On December 10, 2019, Claimant filed applications for DIB and SSI, alleging a disability onset date of January 1, 2008, and claiming she was disabled due to her neck, back, migraines, fibromyalgia, post-traumatic stress disorder ("PTSD"), irritable bowel syndrome ("IBS"), anxiety, and depression. The applications were denied initially and upon reconsideration, and Nagy requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 184). On December 16, 2020, an ALJ held a hearing, during which Nagy, represented by counsel, and an

impartial vocational expert testified.  (ECF No. 8, PageID #: 70-114).  At the hearing, Claimant amended her alleged onset date to December 31, 2015. On January 13, 2021 the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 8, PageID #: 40-69).  The ALJ's decision became final on January 25, 3022, when the Appeals Council declined further review. (ECF No.  8, PageID #: 29).

On March 7, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 12, 14). Claimant asserts the following assignments of error:

> 1. The ALJ erred when he failed to find that the opinions of the treating sources, Dr. James Nichols and Dr. Betsy Bryan, were consistent with and supported by the medical evidence, and failed to incorporate the stated limitations in the RFC.
>
> 2. The ALJ committed harmful error he failed to find that Nagy's headaches equaled Listing 11.02. In the alternative, he erred when his RFC failed to consider the effect of the combination of Nagy's severe impairments and the related symptoms on her ability to engage in substantial gainful activity on a full-time and sustained basis.

(ECF No. 12 at 1).[1]

## III. Background[2]

### A. Claimant's Statements Regarding her Headaches

---

[1] Originally, Claimant also asserted an additional error that "[t]he appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was constitutionally defective." (ECF No. 12 at 1). However, Claimant later withdrew this assignment of error. (ECF No. 15 at 1 ("Plaintiff's counsel did agree to withdraw and not further pursue in her reply brief, the Constitutional Appointments Clause claim made as Issue I in Plaintiff's Brief on the Merits. Accordingly, the Commissioner noted the same in the Commissioner's Brief on the Merits and has not responded to Plaintiff's Issue I in her Brief on the Merits.")).

[2] Because this decision involves only the analysis of Nagy's headaches, the Court has limited the background to this impairment.

During the hearing, Nagy testified that her headaches prevent her from working full time as they prevent her from getting out of bed due to pain and nausea. (ECF No. 8, PageID #: 91-92). Nagy testified that she has suffered from chronic migraines her entire life and after her injury they were "amplified" and have become worse over the years. (ECF No. 8, PageID #: 92). After various first-line medications were unsuccessful in treating Nagy's chronic migraines, she began treatment using Botox injections. Nagy testified that for the initial year, the Botox injections helped but that after while the injections no longer worked. (ECF No. 8, PageID #: 96). She testified that her migraines are so severe that they would cause her to miss work at least three days a week and sometimes four or five days due to the exhaustion that follows the migraines. (ECF No. 8, PageID #: 98). Nagy complained that her headache symptoms included nausea and dizziness. (ECF No. 8, PageID #: 100-101). Nagy testified that her headaches have intensified within the last year (2020). (ECF No. 8, PageID #: 101). She explained that previously she would have the headaches the same frequency and that even though they were not as intense as at the end of 2020, they would last an entire day. (ECF No. 8, PageID #: 101-102). Nagy testified that the Botox injections helped for about a year and a half before it stopped working.  (ECF No. 8, PageID #: 102-103).

**B.  Relevant Medical Evidence**

On February 1, 2018, Nagy treated with Dr. Stephanie Kopey at MHYX Physicians Enterprise LLC for her recurrent migraines. (ECF No. 8, PageID 554, Ex. 5F at 60). Dr. Kopey noted that Nagy had suffered from migraines since age eleven.[3] Dr. Kopey noted:

---

[3] Dr. Kopey noted several occipital nerve blocks in Nagy's medical history. Nagy had a nerve block on December 18, 2015 for occipital neuritis and somatic dysfunction of the cervical thoracic spine as well as January 27, 2016 and February 3, 2016. (ECF No. 8, PageID #: 495, Ex. 5F). Nagy reported 80-90% pain relief that lasted a day to a week following the procedures. (ECF No. 8, PageID #: 558, Ex. 5F at 64). Nagy reported relief from headaches for one week following the second procedure. Additionally, Nagy reported that her pain is greater in her right occipital region. (ECF No. 8, PageID #: 558, Ex. 5F at 64).

3

> 30 headache days a month. The pain is rated Pain Score: 6, is described as pulsating, burning, and is located in the bilateral occipital region with radiation to the top of the head. The symptoms have been unchanged since onset. The pain is better with dry needling, massage, TENS. The pain is worse with lights, sounds. There is aura is nausea and vomiting. HIT-6 score was 63. The prior workup has included: CT head, MRI head, EEG. The prior treatment has included: amitriptyline, propanolol, flexeril, imitrex, maxalt, topamax, tylenol, ibuprofen, cervical ESI, occipital nerve block.

(ECF No. 8, PageID #: 555, Ex. 5F at 61). Dr. Kopey diagnosed Nagy with chronic daily headache, neuralgia greater occipital bilateral, cervical myofascial pain syndrome, and chronic migraine. (ECF No. 8, PageID #: 556, Ex. 5F at 62). The plan was to treat Nagy with Botox for her migraines upon insurance approval. (ECF No. 8, PageID #: 556, Ex. 5F at 62).

On February 27, 2018, Nagy treated with Dr. Kopey for her migraines. (ECF No. 8, PageID #: 553, Ex. 5F at 59). Dr. Kopey noted "Patient has a history of chronic daily migraine. The patient has failed 3 prophylactic medications. The patient has continued to have chronic migraine headaches for more than 15 days every month each time lasting more than four hours for longer than 4 months in duration." (ECF No. 8, PageID #: 553, Ex. 5F at 59). Nagy received Botox injections and was told to expect improvement in about two weeks and to follow up in six weeks.

On April 10, 2018, Nagy had her six-week follow up with Dr. Kopey. (ECF No. 8, PageID #: 551, Ex. 5F at 57). Nagy reported that her headaches were reduced to two per month since her Botox injection and the headaches were less severe. (ECF No. 8, PageID 551, Ex. 5F at 57). The pain was no longer worse with lights and sounds. There was no aura, nausea, or vomiting. (ECF No. 8, PageID 551, Ex. 5F at 57). The plan was to continue Botox treatment at an increased dose. Nagy had her next set of Botox injections on May 25, 2018. (ECF No. 8, PageID #: 550, Ex. 5F at 56). At her six-week follow up on July 11, 2018, Nagy reported no headaches during the previous visit. The plan was for Nagy to follow up for additional Botox injections in six weeks. (ECF No.

8, PageID #: 550, Ex. 5F at 56).

On August 9, 2018, Dr. Kopey added additional sites for Botox injection including EMG guidance for cervical dystonia. Because all Botox was to be given for all sites on the same day, her Botox migraine injections were delayed by the additional sites. (ECF No. 8, PageID #: 544-548, Ex. 5F at 50-54). Nagy received her next Botox injections on September 13, 2018. (ECF No. 8, PageID #: 543, Ex. 5F at 49).  Nagy had her six-week follow up with Dr. Kopey on October 25, 2018. Nagy reported no migraine headaches since the last visit. (ECF No. 8, PageID #: 540, Ex. 5F at 46). Nagy continued to treat with Dr. Kopey for her migraines using Botox injections with similar results. On August 27, 2019, Nagy indicated she had started having breakthrough migraines despite the Botox. (ECF No. 8, PageID #: 517, Ex. 5F at 23). She indicated the pain worsened with lights, she had nausea and vomiting. (ECF No. 8, PageID #: 517, Ex. 5F at 23). Dr. Kopley diagnosed Nagy with chronic daily headache, intractable chronic migraine without aura, bulge of cervical disc without myelopathy, and chronic neck pain. (ECF No. 8, PageID #: 518, Ex. 5F at 24).

Dr. Kopley treated Nagy on October 2, 2019, for neck pain and migraine. (ECF No. 8, PageID #: 514, Ex. 5F at 20). There was a delay in obtaining authorization and she was three weeks past due for the Botox injections. (ECF No. 8, PageID #: 514, Ex. 5F at 20). Nagy's headache pain and neck pain "significantly increased" in the last month due to treatment delay. (ECF No. 8, PageID #: 514, Ex. 5F at 20).

Following Nagy's request to be transferred from Dr. Kopley to Dr. James Nichols, also at MHYX Physicians Enterprise LLC, Dr. Nichols performed an established new patient examination of Nagy on October 2, 2019. (ECF No. 8, PageID #: 510, Ex. 5F at 16). Among other diagnoses, Dr. Nichols diagnosed Nagy with migraine without aura and without status migrainosus, not

5

intractable and neuralgia greater occipital bilateral. (ECF No. 8, PageID #: 513, Ex. 5F at 19).

Nagy returned to Dr. Nichols on November 6, 2019, for evaluation for disability. (ECF No. 8, PageID #: 506-507, Ex. 5F at 12-13). Dr. Nichols repeated his diagnoses including those of neuralgia greater occipital bilateral and intractable chronic migraine without aura and without status migrainosus. (ECF No. 8, PageID #: 510, Ex. 5F at 16).

At her six-week follow up post Botox injections, on November 18, 2019, Nagy reported that although her breakthrough headaches were increasing (she had two days of headaches last month and used rescue medications) her headaches were well controlled with the current Botox treatment, the pain was intermittent and not worse with lights or sounds. Although she became nauseous, she did not vomit.  (ECF No. 8, PageID #: 510, Ex. 5F at 16).

Dr. Kopey treated Nagy on January 15, 2020 and noted that there was a delay of obtaining authorization for her Botox injections by three weeks. (ECF No. 8, PageID #: 711, Ex. 7F at 8). Nagy reported that her headache pain and neck pain significantly increased in the last month.

On February 26, 2020, Dr. Kopey treated the claimant who stated that her headaches were well controlled on the current Botox treatment, and she was receiving medical marijuana from another provider. (ECF No. 8, PageID #: 707, Ex. 7F at 4). During the previous month, Nagy had used rescue mediation three times. Her headache pain was tight with pressure and located in her occipital region. Again, her headaches were accompanied by nausea without vomiting.

On March 17, 2020, Nagy treated with Dr. Nichols for her headaches and neck pain. (ECF No. 8, PageID #: 754, Ex. 8F at 35). Dr. Nichols noted that Nagy has chronic migraines and recently developed new daily occipital headaches with aching pain that radiated. (ECF No. 8, PageID #: 750, Ex. 8F at 31). Dr. Nichols noted that Nagy had occipital tenderness and increased spasm to C1 to T8 and decreased range of motion. (ECF No. 8, PageID #: 754, Ex. 8F at 35).

6

On June 4, 2020, Nagy went to see Dr. Nichols for her six-month follow up. (ECF No. 8, PageID #: 757, Ex. 8F at 38). In addition to Nagy's other medical issues, Dr. Nichols discussed Nagy's chronic occipital headaches and chronic migraines. (ECF No. 8, PageID #: 757, Ex. 8F at 38).  Dr. Nichols again noted that Nagy had occipital tenderness and increased spasm to C1 to T8 and decreased range of motion. (ECF No. 8, PageID #: 762, Ex. 8F at 43).

On October 7, 2020, Nagy treated in the emergency department for migraine headaches (ECF No. 8, PageID #: 971 Ex. 12F at 63). The headache began three days before the arrival and gradually worsened until arrival at the emergency department. (ECF No. 8, PageID #: 971, Ex. 12F at 63).  Nagy's symptoms included nausea, sonophobia, photophobia, right-sided unilateral aching, and dull pain. (ECF No. 8, PageID #: 971, Ex. 12F at 63).  Nagy was unable to obtain relief through use of her breakthrough mediations. (ECF No. 8, PageID #: 971, Ex. 12F at 63).  She reported that she felt much better after receiving Toradol and Compazine. (ECF No. 8, PageID #: 973, Ex. 12F at 65). F/65).

On October 15, 2020, Nagy again treated in the emergency department for migraine, which began a week ago, and was progressively worsening (ECF No. 8, PageID #: 909, Ex. 12F at 1). Her primary care physician prescribed valium and indomethacin with no improvement so far. Examination showed sensation was intact to light touch. (ECF No. 8, PageID #: 762, Ex. 12F at 5). Nagy's symptoms included nausea, vomiting, photophobia, and neck pain. (ECF No. 8, PageID #: 910, Ex. 12F at 2). She was diagnosed with other migraine, not intractable. (ECF No. 8, PageID #: 914, Ex. 12F at 6).

Nagy followed up with Dr. Nichols for her chronic migraines on October 18, 2020. (ECF No. 8, PageID #: 1024, Ex. 13F at 1). Dr. Nichols noted:

> The current episode started more than 1 year ago. The problem occurs intermittently. The problem has been waxing and waning.

> The pain is located in the bilateral region. The pain radiates to the left neck and right neck. The quality of the pain is described as band-like. The pain is at a severity of 6/10. The pain is moderate. Associated symptoms include neck pain. Pertinent negatives include no abdominal pain, back pain, coughing, dizziness, ear pain, eye pain, eye redness, fever, hearing loss, nausea, numbness, photophobia, rhinorrhea, seizures, sinus pressure, sore throat, tinnitus, vomiting or weakness. The symptoms are aggravated by fatigue and emotional stress. She has tried beta blockers, Excedrin, NSAIDs and triptans (botox) for the symptoms. Improvement on treatment: was working prior to this exacerbation. Her past medical history is significant for migraine headaches and migraines in the family.

(ECF No. 8, PageID #: 1024, Ex. 13F at 1). Following the visit, Dr. Nichols diagnosed Nagy with bilateral occipital neuralgia and migraine without aura and without status migrainosus, not intractable. (ECF No. 8, PageID #: 1029, Ex. 13F at 6). Dr. Nichols referred Nagy to Mercy Health Youngstown Advanced Neurology Associates for her migraines. (ECF No. 8, PageID #: 1043, Ex. 15F at 4).

Nagy underwent a physical therapy evaluation on October 22, 2020, for chronic low back pain, headaches, and neck pain. She stated that pain and weakness were progressively worsening affecting her daily activities. (ECF No. 8, PageID #: 1053, Ex. 16F at 6).

On November 5, 2020, Nagy treated with her psychologist and Licensed Professional Clinical Counselor, Dr. Betsy Bryan.[4] (ECF No. 8, PageID #: 1084, Ex. 17F at 29). Nagy noted an increase in her migraine headaches. (ECF No. 8, PageID #: 1084, Ex. 17F at 29).

On November 24, 2020, following a referral from Dr. Nichols, Andrea Svoboda, APRN-CNP treated the claimant and reported right sided unilateral and bilateral daily headaches with accompanying nausea, vomiting, sonophobia, photophobia, vertigo, and neck stiffness. (ECF No.

---

[4] Nagy treated with Dr. Bryan for psychotherapy from July 2020 through the hearing. (*See, generally* ECF No. 8, Ex. 17F).

8, PageID #: 1043, Ex. 15F at 4). Nagy indicated the pain level was "7-10". (ECF No. 8, PageID #: 1043, Ex. 15F at 4). She reported at least two severe headaches per week lasting two to three days each. (ECF No. 8, PageID #: 1043, Ex. 15F at 4). Svoboda noted that Nagy's functional impairment related to her migraines was "moderate to severe" and that first line agents including topiamirate, VPA, amitriptyline, sumatriptan, Maxalt, and Fioricet were ineffective. (ECF No. 8, PageID #: 1044, Ex. 15F at 5). Nagy reported that Botox treatments had initially helped but that the Botox was no longer providing enough relief. (ECF No. 8, PageID #: 1044, Ex. 15F at 5). Svoboda diagnosed Nagy with chronic migraines without aura noting "muscle stiffness and suspected underlying occipital neuralgia as possible triggers. Having over 25 [headache] days per month and failed multiple first line agents. Currently also on Botox with unimpressive results. May benefit from [calcitonin gene-related peptide] receptor inhibition for both prevention and rescue." (ECF No. 8, PageID #: 1046, Ex. 15F at 7). Svoboda also diagnosed Naby with chronic neck pain and suspect occipital neuralgia. (ECF No. 8, PageID #: 1046, Ex. 15F at 7). Svoboda prescribed Ajovy and recommended additional occipital nerve blocks as well as Botox. (ECF No. 8, PageID #: 1046, Ex. 15F at 7).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: degenerative disc disease, migraines, posttraumatic stress disorder, depressive disorder, anxiety disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

(ECF No. 8, PageID #: 46).

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(ECF No. 8, PageID #: 48).

> 11. The claimant has not been under a disability, as defined
> in the Social Security Act, from January 1, 2008, through the date
> of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8, PageID #: 63).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance

benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Two issues are before this Court: 1) Whether "[t]he ALJ erred when he failed to find that the opinions of the treating sources, Dr. James Nichols and Dr. Betsy Bryan, were consistent with and supported by the medical evidence, and failed to incorporate the stated limitations in the RFC" and 2) Whether "[t]he ALJ committed harmful error [when] he failed to find that Nagy's headaches equaled Listing 11.02. In the alternative, [whether] he erred when his RFC failed to consider the effect of the combination of Nagy's severe impairments and the related symptoms on her ability to engage in substantial gainful activity on a full-time and sustained basis." (ECF No. 12 at 1). Because the Court finds that remand is required as to Nagy's second issue the Court need not opine on the first issue.

In Nagy's second assignment of error, she first asserts that the ALJ committed harmful error by not finding that her headaches equaled Listing 11.02. Alternatively, Nagy asserts that the ALJ erred by failing to consider the effect of the combination of Nagy's severe impairments and the related symptoms on her ability to engage in substantial gainful activity on a full-time and sustained basis. For the reasons that follow, this Court finds that the ALJ failed to consider the extent of Nagy's chronic daily headaches, including her occipital neuralgia, in his analysis of Listing 11.02. Even assuming that the ALJ concluded that it was not necessary to consider Nagy's occipital neuralgia in his analysis, the ALJ failed to build a logical bridge between the evidence and his conclusion. Accordingly, remand is required.

Nagy asserts that she suffers from primary headache disorders of migraines and occipital neuralgia.[5] Primary headache disorders are not included in the listed impairments. However, a listing is medically equaled if "a primary headache disorder, alone or in combination with other impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635, at *7. The SSR instructs that Listing 11.02 (paragraph B or D for dyscognitive seizures) is the "most closely analogous listed impairment" for an MDI of a primary headache disorder. Claimant argues that

---

[5] The American Association of Neurological Surgeons ("AANS") defines occipital neuralgia as a condition "in which the occipital nerves, the nerves that run through the scalp, are injured or inflamed. This causes headaches that feel like severe piercing, throbbing or shock-like pain in the upper neck, back of the head or behind the ears." https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Occipital-Neuralgia. (last visited February 22, 2023); *see also National Institute of Neurological Disorders and Stroke*, OCCIPITAL NEURALGIA (https://www.ninds.nih.gov/health-information/disorders/occipital-neuralgia?search-term=occipital%20neuralgia (last visited February 23, 2023)).

Listing 11.02B applies to her migraines and occipital neuralgia. (ECF No. 12 at 20).[6] In pertinent part, Listing 11.02B involves "Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)." 20 C.F.R. Part 404, Subpart P, App.1, § 11.02. In determining whether a claimant's impairments are equivalent to Listing 11.02B, the ALJ is to consider:

> [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7. Here, the ALJ found that Nagy's migraines did not equal Listing 11.02. Specifically, the ALJ stated that: "the record is absent an opinion by a medical expert or other acceptable medical source that the headache related evidence of record medially equals listing 11.02[.]" (ECF No. 8, PageID #: 48). Additionally, the ALJ explained why the medical records did not demonstrate that Nagy's migraines medically equaled Listing 11.02:

---

[6] Claimant also argues that she satisfies Listing 11.02A. (ECF No. 12 at 20). However, Listing 11.02A does not apply to headaches. *See* SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019) ("While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (**paragraph B or D** for dyscognitive seizures[.])"(emphasis added)); *see Gross v. Comm'r of Soc. Sec.*, No. 3:22-CV-229, 2022 WL 17717422, at *6 (N.D. Ohio Oct. 26, 2022); *but see Heather R. v. Saul*, No. 4:20-CV-04082-VLD, 2021 WL 3080331, at *16 n.10 (D.S.D. July 21, 2021). Listing 11.02A involves "a loss of consciousness *and* violent muscle contractions," at least once a month for at least three consecutive months. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 11.02. Even if Listing 11.02A applied to headaches, the Court could find no instances in the record where Nagy experienced "a loss of consciousness and violent muscle contractions."

The record indicated that the claimant had significant improvement in both the severity of the pain and the frequency of her migraine headaches when she obtained her botox injections in a timely manner. Dr. Kopey treated the claimant on April 10, 2018 and she reported that her headaches were reduced to two per month since her Botox injection and the headaches were less severe (Ex. 5F/57). The pain was no longer worse with lights and sounds. There was no aura, nausea, or vomiting. Stephanie Kopey, D.O. treated the claimant on November 18, 2019 for neck pain and migraine (Ex. 5F/10). She reported that her headaches were well controlled with the current Botox treatment. The pain was intermittent. She had two days of headaches last month and used rescue medications. The pain was better with Celebrex. The pain was not worse with lights or sounds. She did not have an aura. There was nausea but not vomiting. On February 26, 2020, Dr. Kopey treated the claimant who stated that her headaches were well controlled on the current Botox treatment and she was receiving medical marijuana from another provider (Ex. 7F/4). Although the claimant testified that her migraine headaches worsened in 2020, the record reflected that the claimant actually complained of daily occipital headaches in 2020, rather than migraine headaches. James Nichols, D.O. treated the claimant on March 17, 2020 for recurrent occipital headaches that were new and in addition to her migraine headaches (Ex. 8F/31). She reported that she had these headaches daily. Examination showed occipital tenderness and increased spasm from C1 to T8 with decreased rotation of motion (Ex. 8F/35). Her coordination is normal. Her reflexes were normal and symmetric. Her behavior, thought content, and judgment were normal. On June 4, 2018, James Nicols, D.O treated the claimant for occipital headaches that occurred daily and was increasing, which were different then her migraine headaches (Ex. 13F/7). While the record reflected two emergency room visits for migraine headaches in October of 2020, the record did not reflect persistent migraine headaches in 2020 of a severe nature in the frequency required by the listing (Ex. 12F/1, 63).

(ECF No. 8, PageID #: 49).

As an initial matter, the ALJ correctly observed there no medical opinion specifically states that Nagy meets Listing 11.02. However, such an opinion is not required. Instead, the ALJ was required to consider detailed descriptions of Nagy's typical headache event from acceptable medical sources, which includes all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms). SSR 19-4p. On November 24, 2020, Nagy

14

had a Telemedicine visit with Andrea Svoboda, Certified Nurse Practitioner, in Mercy Health Youngstown Advanced Neurology Associates. The records of that visit include details of Nagy's headache events. (ECF No. 8, PageID #: 1040-1047, Ex. 15F). Specifically, the record notes that Nagy suffers from right-sided, unilateral and bilateral occipital headaches presenting as burning, pressure, pulsating and tingling at a pain level of seven out of ten. The headaches occur for two to three days at a time and are accompanied by nausea, vomiting, sonophobia, photophobia, vertigo, and neck stiffness. (ECF No. 8, PageID #: 1043, Ex. 15F at 4). The degree of Nagy's functional impairment is described as moderate and severe. (ECF No. 8, PageID #: 1044, Ex. 15F at 5). Nagy noted having at least two severe headaches each week, each lasting up to two to three days. (ECF No. 8, PageID #: 1043, Ex. 15F at 4). Nagy reported that she was treating her headaches with Botox injections, which had provided initial relief but that the relief had diminished. (ECF No. 8, PageID #: 1044, Ex. 15F at 5). Svoboda also noted that Nagy had tried numerous first-line treatments that had been ineffective in controlling her headaches. (ECF No. 8, PageID #: 1044, Ex. 15F at 5). Svoboda assessed Nagy with chronic migraines without aura, noting that Nagy was having over twenty-five headache days per month and was treating with Botox with "unimpressive results." (ECF No. 8, PageID #: 1046, Ex. 15F at 7). It does not appear that the ALJ considered this visit record in his analysis of Listing 11.02. (*See* ECF No. 8, PageID #: 48-49). Additionally, the ALJ does not appear to have considered Nagy's October 18, 2020, appointment with Dr. Nichols in the analysis of Listing 11.02. During that visit, Dr. Nichols specifically evaluated Nagy's chronic migraines, including the length of the current episode (beginning more than one year prior); a typical headache event (radiating pain that waxes and wanes; located in the bilateral region, with a pain level of six); the frequency of headache events (daily); and Nagy's treatments (beta blockers, Excedrin, NSAIDs and triptans (Botox)). (ECF No. 8, PageID #: 1024, Ex. 13F at

1).

The Court concludes that Nagy has raised a substantial question as to Listing 11.02. The ALJ's decision does not appear to consider all of Nagy's chronic daily headaches – whether they are daily occipital headaches or other chronic migraines – in connection with his discussion of Listing 11.02B or SSR 19-4p. Instead, the ALJ appears to exclude Nagy's daily, increasing occipital headaches from his consideration when analyzing Listing 11.02B. It is unclear why the ALJ made the distinction between whether Nagy's chronic daily headaches are migraines or occipital headaches. Indeed, Nagy's medical providers often did not define her headaches as solely relating to chronic daily headache, chronic migraines, or occipital neuralgia.  (*See eg.* ECF No. 8, PageID #: 1046, Ex. 15F at 7; PageID #: 711, Ex. 7F at 8).

Social Security Ruling 19-4p applies to *all* primary headache disorders. The Ruling explains that headaches are classified as either primary or secondary headaches. "Primary headaches occur independently and are not caused by another medical condition. Secondary headaches are symptoms of another medical condition such as fever, infection, high blood pressure, stroke, or tumors." SSR 19-4p. "*Primary headache disorders* are a collection of chronic headache illnesses characterized by repeated exacerbations of overactivity or dysfunction of pain-sensitive structures in the head." SSR 19-4p. "Examples of common primary headaches include migraines, tension-type headaches, and trigeminal autonomic cephalalgias." SSR 19-4p. Occipital neuralgia can also be a primary headache disorder.  *American Academy of Neurological Surgeons*, OCCIPITAL       NEURALGIA,       https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Occipital-Neuralgia (last visited February 22, 2023).

Here, the ALJ does not appear to have considered the extent of Claimant's chronic daily headaches, including her occipital neuralgia, when considering whether her headache disorder

16

equaled Listing 11.02. Instead, the ALJ focused solely on Nagy's initial decrease in the severity and/or occurrence of her migraines through the use of Botox injections for a period of time through the beginning of 2020. The ALJ singled out Nagy's migraine disorder and did not consider Nagy's continued and increased daily headaches or occipital headaches. (*See* ECF No. 8, PageID #: 49 ("Although the claimant testified that her migraine headaches worsened in 2020, the record reflected that the claimant actually complained of daily occipital headaches in 2020, rather than migraine headaches."))[7]. The ALJ acknowledged that Nagy continued to suffer from headaches throughout 2020 but did not consider them in his analysis of Listing 11.02. Nor did the ALJ explain the reason why he failed to consider the combination of headaches in evaluating Listing 11.02.

According to Nagy's medical records, despite her Botox treatments and first-line medications, her chronic headaches steadily increased in severity and occurrence throughout 2020. On January 15, 2020, Nagy reported that her headache and neck pain had significantly increased in the last month. (ECF No. 8, PageID #: 711, Ex. 7F at 8). This was attributed to a three-week delay in obtaining insurance authorization for the Botox; however, Nagy reported during her February 26, 2020 examination that although her headaches were "well controlled" since her last Botox injection, she continued to experience three headache days in the previous month (ECF No. 8, PageID #: 707, Ex. 7F at 4). In March 2020, Dr. Nichols noted that Nagy suffered from daily occipital headaches and chronic migraines. (ECF No. 8, PageID #: 750, Ex. 8F at 31). In June 2020, Dr. Nichols noted chronic daily headaches with a pain level of five out of ten. (ECF No. 8, PageID #: 757, Ex. 8F at 38).  Nagy appeared in the emergency room on October 7 and 13, 2020 for treatment for her headaches. (ECF No. 8, PageID #:909-1017, Ex. 13F). On October 18, 2020,

---

[7] The Court also notes that this is an incorrect observation in that Nagy also complained of and was treated for migraines in 2020.

Dr. Nichols noted chronic migraine with pain severity at level six and referred to her to Mercy Health Youngstown Advanced Neurology Associates. By November 2020, Nagy's records show that her chronic headaches had increased in severity to pain level of seven and were occurring twice a week for up to three days each headache. (ECF No. 8, PageID #: 1040, Ex. 15F).

Had the ALJ considered all of Nagy's chronic daily headaches, including the occipital neuralgia, he could have found that she met Listing 11.02 as there is evidence in the record that Nagy had significant headaches occurring at least once a week for at least three consecutive months despite adherence to the prescribed treatment. 20 C.F.R. Part 404, Subpart P, App.1, § 11.02. Accordingly, this matter must be remanded so that the ALJ can properly evaluate whether the chronic daily headaches, including Nagy's daily occipital headaches, met or equaled Listing 11.02 or properly explain why it was unnecessary to consider certain chronic daily headaches in his determination. Given that remand is appropriate on the issue of whether Nagy's headaches equaled Listing 11.02, in the interest of judicial economy, the Court need not reach Nagy's additional issues.

## VI. Conclusion

Based on the foregoing, it the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: March 8, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE